204 P.3d 928 (2009)
Lloyd A. HERMAN, Respondent and Cross-Appellant,
v.
STATE OF WASHINGTON SHORELINES HEARINGS BOARD, Spokane County, Defendant,
State of Washington Department of Ecology, Appellant.
No. 26459-9-III.
Court of Appeals of Washington, Division 3.
February 5, 2009.
Publication Ordered March 31, 2009.
*930 Thomas J. Young, Attorney General's Office, Olympia, WA, for Appellant/Cross-Respondent.
Dennis Dean Reynolds, Law Office of Dennis D. Reynolds, Bainbridge Island, WA, for Respondent/Cross-Appellant.
SWEENEY, J.
¶ 1 This appeal follows a decision by the State of Washington Shorelines Hearings Board that affirmed imposition of a substantial penalty on a landowner for violating the terms of an earlier agreement with governmental agencies, and for undertaking substantial development without a permit and in violation of the Shoreline Management Act of 1971 (Shoreline Management Act), chapter 90.58 RCW. The superior court, sitting in its appellate capacity, admitted and considered new evidence on the propriety of the landowner's actions. The court then concluded based on that evidence that most of the unpermitted development should remain in place. Both the decision to admit additional evidence and the conclusion that the development did not run afoul of either the landowner's earlier agreement or the Shoreline Management Act are wrong. And we therefore reverse the superior court and affirm the decision of the Shorelines Hearings Board.

FACTS
¶ 2 Lloyd Herman purchased a hillside single-family residence on the shores of Liberty Lake from his father in 1970. Liberty Lake is protected as a shoreline of the state under the Shoreline Management Act. WAC 173-20-660(31).
¶ 3 Mr. Herman's father purchased the home in 1953 and remodeled it to expand the footprint of the home to 11,000 square feet. At the time Mr. Herman purchased the property, the following alterations were already in place: a dirt and timber trail with steps down to the beach, a rock bulkhead, a platform and a dock, retaining walls made from creosoted timbers, and a few large trees that reinforced the slope down to the lake.
¶ 4 Between 1970 and 1993, Mr. Herman improved the property. He added a crane and lift, anchored in a pier made out of cement and rocks on top of a naturally occurring rock outcropping in the lake. He removed the old platform and replaced it with *931 a deck that was approximately four square feet larger. He replaced the pier blocks supporting the deck with rock from the beach and added rock retaining walls. He constructed a roof over the deck, supported by eight-foot-high posts, which served as a second deck. Mr. Herman replaced the wooden stairs at the end of the deck with wider, concrete stairs.
¶ 5 In 1993, the Department of Ecology imposed a $1,000 penalty on Mr. Herman for improving the shoreline without a shoreline permit and in violation of the Shoreline Management Act and the Spokane County Shoreline Master Program. The work it complains of included filling the lake waterward of the ordinary high water mark and constructing a rock and mortar bulkhead, a covered deck, and a concrete platform and stairs. Mr. Herman appealed the 1993 penalty to the Shorelines Hearings Board. Ecology and Mr. Herman reached a settlement in 1995, before a hearing on the merits of Mr. Herman's appeal. They recorded their agreement in a stipulation and agreed order of dismissal. Mr. Herman agreed to remove the boat crane and lift and a portion of the retaining wall or bulkhead on the northern property line. Ecology agreed to repeal the $1,000 penalty.
¶ 6 The essence of the present dispute is whether or to what degree Mr. Herman complied with the 1995 agreement and whether he violated other provisions of the Shoreline Management Act. The parties agree, however, that Mr. Herman completed additional work on the property following the 1995 agreement.
¶ 7 Specifically, Mr. Herman modified the deck by moving the fill and rock under the deck a few feet landward. He enclosed the deck structure, added a peaked roof to resemble the historic Liberty Lake Pavilion, and furnished it with a kitchen sink, toilet, shower, refrigerator, tables, chairs, and a concrete patio. The peaked roof was designed to divert water to a vegetated area behind the deck structure. Mr. Herman widened the steps from the dock up to the deck structure by adding two short sets of stairs down to the beach. He planted the hillside with an assortment of native and non-native plants. He covered the bulkhead on the north side of the property with concrete, creating a pathway along the lakefront and installed a handrail and lights. He replaced the dirt and timber trail to the beach with a concrete stairway, eight feet wide in places, designed to divert storm water runoff. And Mr. Herman did not remove the crane.
¶ 8 Ecology, Spokane County, and the Washington Department of Fish and Wildlife learned about Mr. Herman's additional modifications in 2003. The agencies sent Mr. Herman letters expressing concern about potential violations. Mr. Herman responded with a letter justifying his additions. In January 2004, representatives of the agencies met with Mr. Herman at his property to look at the modifications.
¶ 9 In May 2004, Ecology and Spokane County issued a joint shoreline violation order. It included a $30,000 civil penalty, a stop-work order, and a requirement that Mr. Herman submit a plan within 30 days detailing his plan to restore the shoreline. Mr. Herman discontinued work on his property and appealed the order to the Shorelines Hearings Board.
¶ 10 The Shorelines Hearings Board held a hearing and issued findings of fact, conclusions of law, and an order. It concluded that Mr. Herman substantially violated the agreement. The violations included widening the concrete steps to the beach, failing to remove the lift and crane, failing to remove a portion of the bulkhead, failing to remove a portion of the deck cover, failing to remove the fill and stacked rocks from under the deck, planting non-native vegetation to stabilize the slope, and generally increasing the development of the shoreline rather than decreasing development. The board further concluded that, independent of the agreement, Mr. Herman violated the Shoreline Management Act by undertaking substantial development without a permit, including the concrete stairway and retaining walls constructed after the agreement. The board affirmed the $30,000 penalty that Ecology and Spokane County imposed but ordered $10,000 of the penalty suspended on condition that Mr. Herman fully comply with the order's provisions *932 within one year. The board also instructed Mr. Herman on the restoration plan.
¶ 11 Mr. Herman appealed the Shorelines Hearings Board's order to superior court. Mr. Herman also successfully moved to stay enforcement of the board's order pending judicial review. With Ecology's approval, Mr. Herman retained two consulting firms to prepare reports regarding storm water management and geotechnical slope stability.
¶ 12 The superior court granted Mr. Herman's motion to supplement the administrative record with the reports prepared by these consultants. Ecology objected to the admission of the reports into evidence.
¶ 13 The court first concluded that there was inadequate error to reverse given the criteria of the Administrative Procedure Act (APA), chapter 34.05 RCW, and it issued a decision in a letter ruling that affirmed the board's order. The superior court later entered findings of fact, conclusions of law, and issued an order. The court affirmed the board's order, subject to several conditions. The court concluded that many of the structures on the property could not be safely removed without destabilizing the slope. The court refused to order Mr. Herman to remove any of the structures. And the court required Mr. Herman to obtain a permit only for the two small stairways to the beach. The court remanded one issue to the board whether the $10,000 suspended portion of the penalty should be waived.
¶ 14 Both Ecology and Mr. Herman appeal.

DISCUSSION

ADMISSION OF EVIDENCE NOT BEFORE THE BOARD
¶ 15 Ecology first contends that the superior court erred by admitting and considering evidence that was not admitted or considered by the Shorelines Hearings Board. Mr. Herman responds that the court appropriately admitted and considered new evidence for any of three reasons: (1) the new evidence fell within one of the exceptions to the general statutory prohibition against admitting new evidence; (2) the new evidence was contemplated by the board's order and Mr. Herman's agreement with Ecology; or (3) the evidence was necessary for the superior court to resolve the factual issues it was required to address by the appeal.
¶ 16 Whether the superior court properly admitted additional evidence when it reviewed the board's decision is a question of law that we will review de novo. See Port of Seattle v. Pollution Control Hearings Bd., 151 Wash.2d 568, 588, 90 P.3d 659 (2004).
¶ 17 The APA governs judicial review of agency actions, including the Shorelines Hearings Board's decisions. Buechel v. Dep't of Ecology, 125 Wash.2d 196, 201, 884 P.2d 910 (1994); see RCW 90.58.180(3). "[R]eview by an appellate court is to be on the agency record without consideration of the findings and conclusions of the superior court." Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wash.2d 621, 633, 869 P.2d 1034 (1994). However, where the superior court accepts additional evidence under RCW 34.05.562 and "`information needed for review is contained in the superior court record of proceedings, not the agency record,'" we consider the superior court record. Twin Bridge Marine Park, LLC v. Dep't of Ecology, 162 Wash.2d 825, 834, 175 P.3d 1050 (2008) (quoting Waste Mgmt. of Seattle, 123 Wash.2d at 633-34, 869 P.2d 1034).
¶ 18 RCW 34.05.562(1) sets the parameters for superior court consideration of additional evidence. A superior court reviewing an agency decision "may receive evidence in addition to that contained in the agency record ... only if it relates to the validity of the agency action at the time it was taken and it is needed to decide disputed issues regarding:" (a) improper constitution of the decision-making body; (b) the unlawfulness of the procedure; or (c) "[m]aterial facts in rule making, brief adjudications, or other proceedings not required to be determined on the agency record." RCW 34.05.562(1) (emphasis added). A superior court may not allow additional evidence where the proponent of the evidence alleges only that the record is incomplete. Lewis County v. Pub. Employment Relations Comm'n, 31 Wash.App. 853, 861, 644 P.2d *933 1231 (1982). Here, the superior court did not admit the declarations and reports under any of the exceptions set out in RCW 34.05.562(1). Mr. Herman argues, nonetheless, that the Shorelines Hearings Board's order itself contemplated the admission of the reports. We do not read the board's order as doing so.
¶ 19 The superior court reviews agency orders in a limited appellate capacity. Mader v. Health Care Auth., 109 Wash.App. 904, 922, 37 P.3d 1244 (2002), rev'd in part on other grounds, 149 Wash.2d 458, 70 P.3d 931 (2003). Mr. Herman's appeal from the board's decision invoked the court's appellate, not its general or original, jurisdiction. Reeves v. Dep't of Gen. Admin., 35 Wash. App. 533, 537, 667 P.2d 1133 (1983); see also Fay v. Nw. Airlines, Inc., 115 Wash.2d 194, 197, 796 P.2d 412 (1990). And, again, the APA controls review of a Shorelines Hearings Board decision. Batchelder v. City of Seattle, 77 Wash.App. 154, 158, 890 P.2d 25 (1995). The APA's provisions set forth the circumstances in which a reviewing court may receive additional evidence. None apply here.
¶ 20 A court considering a petition for judicial review may not generally admit new evidence or decide disputed factual issues. RCW 34.05.558 (judicial review confined to agency record); RCW 34.05.562 (court may receive new evidence only if it relates to the validity of the agency action at the time it was taken and meets one of three exceptions); Motley-Motley, Inc. v. Pollution Control Hearings Bd., 127 Wash.App. 62, 76, 110 P.3d 812 (2005) (new evidence admissible on judicial review only in "highly limited circumstances"). Here, the court did not admit the declarations and reports submitted by Mr. Herman under any of the narrow exceptions provided by the APA. See RCW 34.05.562(1); Clerk's Papers (CP) at 428-29. But the court relied on those expert declarations and reports to reach conclusions different from the board's. See CP at 494, 501. That was error.
¶ 21 Mr. Herman also attempts to justify the admission of these reports on two additional grounds, that (1) the Shorelines Hearings Board effectively ordered the declarations to supplement the record before the superior court; and (2) even if the reports constituted a new issue, RCW 34.05.554(a) permits the court to consider them. On the first point, nothing in the board's order suggests an intent to disturb the APA's allocation of jurisdiction for judicial review or authorization to accept evidence in addition to the board's record. Granted, the board does not name an actor when it refers to the contingencies upon which approval of Mr. Herman's permit applications and restoration plan will depend. But the board is careful to clarify that Spokane County retained the permitting authority and the discretion allocated to Spokane County by WAC 173-27-150(2). CP at 71. On the second point, even if the reports were to constitute a "new issue" under RCW 34.05.554(1), the proper action for the court under RCW 34.05.554(2) would have been to "remand to the agency for determination [of] any issue that is properly raised pursuant to subsection (1)."
¶ 22 The superior court then erred by admitting and considering evidence by Mr. Herman's experts.

SUPERIOR COURT'S DESIGNATION OF THE SHORELINES HEARINGS BOARD'S ORDER AS "SELF-EXECUTING"
¶ 23 Ecology next assigns error to the superior court's conclusion that the Shorelines Hearings Board's order was "self-executing." It argues that the court effectively eviscerated both the agreement between Mr. Herman and Ecology and the board's order, while purporting to "affirm" the board's order. Mr. Herman responds that the board's order was self-executing as to the existing structures and that the order only required him to apply for a permit or hydraulic project approval for prospective changes to the property.
¶ 24 Our review is of the Shorelines Hearings Board's decision, not the decision of the local government or of the superior court. Buechel, 125 Wash.2d at 202, 884 P.2d 910. And the standard of review is whether the board's decision was "arbitrary and capricious" or "clearly erroneous" in light of the entire record and public policy contained in *934 the Shoreline Management Act. Id. at 201-02, 884 P.2d 910.
¶ 25 We also give "due deference ... to the specialized knowledge and expertise of the Board." Id. at 202-03, 884 P.2d 910. Again, the APA governs judicial review of agency actions, including the Shorelines Hearings Board's decisions. Id. at 201, 884 P.2d 910; see RCW 90.58.180(3). "[R]eview by an appellate court is to be on the agency record without consideration of the findings and conclusions of the superior court." Waste Mgmt. of Seattle, 123 Wash.2d at 633, 869 P.2d 1034. We may consider the superior court record of proceedings only where the superior court accepts additional evidence under RCW 34.05.562. Twin Bridge Marine Park, 162 Wash.2d at 834, 175 P.3d 1050. We have already concluded that the trial court improperly admitted and considered additional evidence here.
¶ 26 The court's conclusion that the board's order was "self-executing" is a question of law, as framed, and therefore we give no deference to the court's conclusion. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wash.2d 873, 880, 73 P.3d 369 (2003). And, as used here, the order clearly was not self-executing. It ordered specific action by Mr. Herman and imposed specific sanctions if he did not comply. CP at 69-71.
¶ 27 The superior court sits in an appellate capacity. Union Bay Pres. Coal. v. Cosmos Dev. & Admin. Corp., 127 Wash.2d 614, 617, 902 P.2d 1247 (1995). It then had no authority in that capacity (or the expertise) to receive and evaluate the geotechnical report and the letter from the storm water engineer. The APA carefully prescribes the limited scope of judicial review. RCW 34.05.510 through .598 (Part V).
¶ 28 The Shorelines Hearings Board's order contemplates geotechnical evaluations occurring in the context of the permitting process administered by Spokane County. CP at 71. And, again, the order explicitly states that it does not displace the authority granted to the county by WAC 173-27-150(2). That regulation implements the Shoreline Management Act and authorizes the county to "attach conditions to the approval of permits as necessary to assure consistency of the project with the [Shoreline Management Act] and the Spokane County Shoreline Master Program." CP at 71.
¶ 29 The court's conclusions of law that the permitting process or requirement for agency approval did not apply to most of the structures on Mr. Herman's property disrupt the allocation of political power set forth in the Shoreline Management Act and the APA and was, therefore, error. See CP at 500-02; RCW 90.58.140; RCW 34.05.570, .574.

PROPRIETY OF THE SHORELINES HEARINGS BOARD'S DECISION
¶ 30 Mr. Herman also appeals the court's decision that, ostensibly at least, affirmed the Shorelines Hearings Board's decision. He argues that his later development was in accord with his 1995 agreement.
¶ 31 We will grant relief from an agency order when the agency has erroneously interpreted or applied the law. RCW 34.05.570(3)(d). "Interpretation of the [Shoreline Management Act] and [local governments' corresponding shoreline master programs] involves questions of law, which we review for errors of law." Bellevue Farm Owners Ass'n v. Shorelines Hearings Bd., 100 Wash.App. 341, 362, 997 P.2d 380 (2000). We will defer to an agency's factual findings, but we ultimately review its conclusions of law de novo. Mader, 149 Wash.2d at 470, 70 P.3d 931. We do, however, accord deference to the "`agency interpretation of the law where the agency has specialized expertise.'" Pres. Our Islands v. Shorelines Hearings Bd., 133 Wash.App. 503, 515, 137 P.3d 31 (2006) (internal quotation marks omitted) (quoting Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 154 Wash.2d 224, 233, 110 P.3d 1132 (2005)).
¶ 32 We will not disturb the Shorelines Hearings Board's decision unless it is clearly erroneous or arbitrary and capricious. Buechel, 125 Wash.2d at 202, 884 P.2d 910. "Arbitrary and capricious" means "willful and unreasoning action, without consideration and in disregard of facts or circumstances." Smith v. Hollenbeck, 48 Wash.2d 461, 464, 294 P.2d 921 (1956). But where there is room for two opinions, and action is *935 exercised honestly and upon due consideration, the action is not "arbitrary and capricious." Id.
¶ 33 The board's decision here is not arbitrary or capricious. Indeed, its findings and conclusions reflect a thoughtful and thorough investigation of Mr. Herman's modifications to his shoreline.
¶ 34 The Shoreline Management Act requires that all use or development on Washington's shorelines conform to the act. RCW 90.58.140(1), (2); Buechel, 125 Wash.2d at 203, 884 P.2d 910. The act requires that a person first obtain a permit before undertaking any "substantial development" on a Washington shoreline. RCW 90.58.140(2). "Substantial development" includes "any development of which the total cost or fair market value exceeds five thousand dollars, or any development which materially interferes with the normal public use of the water or shorelines of the state." RCW 90.58.030(3)(e). We broadly construe the act to protect the state shorelines as fully as possible. English Bay Enters., Ltd. v. Island County, 89 Wash.2d 16, 20, 568 P.2d 783 (1977); see RCW 90.58.900. "A liberal construction of the act is also mandated by the State Environmental Policy Act. See RCW 43.21C.030(1) and RCW 43.21C.020(3)." English Bay Enters., 89 Wash.2d at 20, 568 P.2d 783.
¶ 35 The Shorelines Hearings Board found adequate support in its lengthy administrative record for its conclusion that Mr. Herman's work on his property was extensive. His work included both expanding existing structures and adding new structures. The board then methodically set out Mr. Herman's violations of the Shoreline Management Act and the Spokane County Shoreline Master Program since 1995 and Mr. Herman's noncompliance with the 1995 agreement.

$30,000 PENALTY
¶ 36 Finally, Mr. Herman argues that the $30,000 penalty imposed by Ecology is excessive.
¶ 37 Again, our review of an administrative agency's decision is limited in scope: "`[T]he judiciary will only review the actions of an administrative agency to determine if its conclusions may be said to be, as a matter of law, arbitrary, capricious, or contrary to law.'" Stegriy v. King County Bd. of Appeals, 39 Wash.App. 346, 350, 693 P.2d 183 (1984) (emphasis omitted) (quoting Helland v. King County Civil Serv. Comm'n, 84 Wash.2d 858, 862, 529 P.2d 1058 (1975)).
¶ 38 A civil penalty is primarily intended to coax compliance with the law and deter future violations. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); see also Lewis v. State, No. 95-53, 1997 WL 104554, at *3 (Wash. Shorelines Hr'gs Bd. Feb. 7, 1997). Here, the board imposed a $30,000 penalty, with $10,000 of it suspended for a year on the condition that Mr. Herman fully complies with the board's order. CP at 69. That penalty does not depart dramatically from previous Shorelines Hearings Board decisions that both Mr. Herman and Ecology discuss. See Correll v. Dep't of Ecology, No. 03-023, 2004 WL 839243 (Wash. Shorelines Hr'gs Bd. Apr. 14, 2004) ($10,000 for first-time violation); Twin Bridge Marine Park, LLC v. Dep't of Ecology, Nos. 01-016 & 01-017, 2002 WL 1650523 (Wash. Shorelines Hr'gs Bd. Jul. 17, 2002), rev'd on other grounds, 162 Wash.2d 825, 175 P.3d 1050 (2008) ($59,000 penalty for repeat violations).
¶ 39 RCW 90.58.210(2) provides that anyone who undertakes development without first obtaining a required permit is subject to a $1,000 civil penalty for "each violation." And "[e]ach permit violation or each day of continued development without a required permit shall constitute a separate violation." RCW 90.58.210(2). Here, the record is clear. Mr. Herman had many days of development without a permit before ceasing work. The board's interpretation of when the days of continued development began to accrue is "entitled to considerable weight" because it is the administering agency for the Shoreline Management Act. See St. Joseph Hosp. & Health Care Ctr. v. Dep't of Health, 125 Wash.2d 733, 743, 887 P.2d 891 (1995). The record supports a finding that Mr. Herman undertook many more than four substantial *936 developments that could count as separate violations.
¶ 40 We reverse the judgment of the trial court insofar as it is inconsistent with the decision of the Shorelines Hearings Board and affirm the order of the board.
WE CONCUR: KULIK, A.C.J., and BROWN, J.